# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

NOS. 12-9011 and 12-9012 (consolidated with 12-9008 and 12-9009)

SW BOSTON HOTEL VENTURE, LLC; AUTO SALES & SERVICE, INC.;
GENERAL TRADING COMPANY; FRANK SAWYER CORPORATION;
100 STUART STREET, LLC; 30-32 OLIVER STREET CORPORATION;
GENERAL LAND CORPORATION; 131 ARLINGTON STREET TRUST

Debtors.

---

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA
Appellee,

v.

CITY OF BOSTON
Appellant.

---

On Appeal from the Bankruptcy Appellate Panel
For the First Circuit

---

## SUPPLEMENTAL BRIEF OF THE CITY OF BOSTON
## TO MORTGAGE BANKERS ASSOCIATION OF AMERICA'S
## BRIEF AS AMICUS CURIAE

Joseph F. Ryan, Esq. (1st Cir. No. 70141)
E. Kate Buyuk, Esq. (1st Cir. No. 1155065)
Lyne, Woodworth & Evarts LLP
12 Post Office Square, 2nd Floor
Boston, Massachusetts 02109
Telephone: (617) 523-6655
jryan@lwelaw.com
kbuyuk@lwelaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. -i-

TABLE OF AUTHORITIES ........................................................................... -ii-

INTRODUCTION ........................................................................................... -1-

ARGUMENT ................................................................................................... -2-

    1.    The City's Voting Rights Are Not Assignable. ................................ -2-

    2.    The Bankruptcy Court Correctly Employed the Flexible Approach and Correctly Determined that Prudential Was Only Entitled to Postpetition Interest from the Date of the Hotel Sale. ...................... -6-

CONCLUSION ............................................................................................... -8-

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B) ........ -10-

CERTIFICATE OF SERVICE ........................................................................ -11-

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Winthrop Old Farm Nurseries, Inc. v. New Bedford Inst. for Sav. (In re Winthrop Old Farm Nurseries, Inc.)*, 50 F.3d 72 (1st Cir. 1995) ..........................................-7-

**STATE CASES**

*Malden & Melrose Gaslight Co., v. Chandler*, 211 Mass. 226, 97 N.E. 906 (1912) ................................................................................................................-5-

**OTHER AUTHORITIES**

Alperin, Howard J., 14 MASSACHUSETTS PRACTICE SERIES (4th Ed. 2006) ......... -5-

Restatement, 2d, Agency, § 387 ......................................................................... -5-

**INTRODUCTION**

The City of Boston, a municipal corporation in the Commonwealth of Massachusetts, acting by and through its Public Facilities Commission by the Director of the Department of Neighborhood Development ("City"), submits this supplemental brief in response to the Mortgage Bankers Association's ("MBA") Brief as Amicus Curiae, and in support hereof states as follows:

MBA's arguments supporting the assignability of voting rights are inapposite. MBA fails to acknowledge the unique circumstances of this case – that the City did not act as an ordinary commercial lender, but rather as a last resort to salvage a stalled, financially endangered project. Moreover, the Bankruptcy Code affords rights to junior creditors such as the City, which MBA seeks to ignore. If blanket voting assignments to senior creditors were permitted, as MBA argues, then senior creditors would be able to control the entire bankruptcy process, at the expense of the rights afforded to junior creditors under the Bankruptcy Code.

MBA's position on Prudential's entitlement to post-petition interest is similarly unavailing. Contrary to employing the "flexible approach" adopted by both the Bankruptcy Court and the Bankruptcy Appellate Panel, and generally endorsed by this Court, MBA argues that the "timing of valuation must be tethered" to plan confirmation. (*MBA Amicus Brief, pg. 23*). This not only

misstates the purpose of the bankruptcy court's valuation which was to determine whether Prudential was entitled to postpetition interest, but it also ignores the essential, unique factors presented in this case – the increasing value of the collateral due to the City Loan and the fortuitous Hotel Sale.  The Bankruptcy Court properly employed the "flexible approach" and made well-substantiated factual findings that Prudential became oversecured only as of the date of the Hotel Sale.

## ARGUMENT

1. <u>The City's Voting Rights Are Not Assignable</u>.

MBA's argument concerning voting rights (*MBA Amicus Brief, pgs. 13 - 23*) does not accurately reflect the situation before this Court.  As the City has made clear in its briefing, it did not act as an ordinary commercial lender with regard to the W Hotel and Residences.  Rather, the City came in – at the eleventh hour – to save a project that was on the verge of being shuttered in the middle of the City because Prudential refused to lend any additional funds to complete the buildout of the restaurant, spa and theme bar which were essential to enabling the Project to open under the prestigious W flag. In order to make the last minute loan, the City had to borrow the funds from HUD, and as security for the HUD Loan, the City

pledged its future affordable housing funding. The City was not motivated to make this loan to turn a profit. It made the loan for the good of all involved, including Prudential, the Debtors and the citizens of the City of Boston. *City Opening Brief at 7-10; City Add. 227-230.*

Before agreeing to allow the City to save the project, Prudential attempted to force the City to assign its voting rights in bankruptcy pursuant to the Intercreditor Agreement. The City advised Prudential before, during and after the execution of the Intercreditor Agreement that it did not consider the assignment of voting rights to be enforceable. *City Opening Brief at 11; City Add. 230.* The Intercreditor Agreement specifically includes an "equity provision".

Given this background (which never has been disputed by Prudential), it is disingenuous for the MBA to premise its argument on the City's "consensual" or "unequivocal" assignment of its voting rights. *See MBA Brief at 13, 15*. The MBA brief further ignores the equity provision in the Intercreditor Agreement, which expressly controls over other provisions of the Intercreditor Agreement, and which undermines MBA's contention that the voting rights assignment was unequivocal. *City Opening Brief at 11; City Add .220, 222, 230.*

In addition, the MBA brief repeatedly and incorrectly equates Prudential's right to priority of <u>repayment</u> with the City's right to <u>participate</u> in the bankruptcy

-3-

proceedings. *MBA Brief at 13, 15*. The City has never disputed that Prudential as senior lender is entitled to priority in accordance with the Intercreditor Agreement.[1] However, MBA repeatedly argues that because Prudential is entitled to priority of payment, the City has no rights or interests to be protected in the bankruptcy context. This is simply untrue. The City must act to protect not only repayment of its loan to Debtors, but also the public interest, the success of the project, and the citizens of Boston.

Contrary to MBA's assertion, allowing the City its voting rights does not give the City excessive "control" over the bankruptcy. *See MBA Brief at 15*. Rather, it provides the City with the participation rights it is guaranteed by the Bankruptcy Code. If Prudential were allowed to squelch the City's participation in bankruptcy, it would then be afforded more than its fair share of "control" or participation in the proceedings and would be exercising powers affecting the citizens of Boston – powers that belong exclusively to the municipal authority.

Prudential's actions throughout this bankruptcy demonstrate why the City must have a voice in the proceedings, even where its right to repayment is subordinate to Prudential. At each step in this proceeding, Prudential has attempted to either wrest control of the collateral away from the Debtors or claim

---

[1] The Intercreditor Agreement, by its terms, allows the City to be repaid out of turn, out of its separate collateral in which Prudential has no interest.

entitlement to the full value of all of the Debtors' collateral. If successful, Prudential would have secured a windfall for itself at the expense of the City and its citizens and other creditors. At a bare minimum, the City has an interest in participating to ensure that Prudential does not garner for itself more that its fair share of the Debtors' assets so that there will be sufficient assets to satisfy the City, after payment of Prudential's fair claim, and thereby protect the City's pledged future affordable housing funds.

    Additionally, contrary to MBA's assertions *(MBA Brief pp. 18-19)*, the Bankruptcy Code does not permit Prudential, a private lender, to act as the City's "agent" to cast votes in the public interest. Contrary to MBA's assertion that Massachusetts agency law permits an agent to act in its own interest on behalf of its principal, Massachusetts law clearly provides that one of an agent's chief duties is the duty of loyalty to its principal. "The agent is a fiduciary, like a trustee, and as such is under a duty to his principal 'to act solely for the benefit of the principal in all matters connected with his agency'." Alperin, Howard J., 14 MASSACHUSETTS PRACTICE SERIES, pg. 64 (4th Ed. 2006), quoting Restatement, 2d, Agency, § 387. An agent may not personally profit at the expense of his principal. *Id.* at 65, citing *Malden & Melrose Gaslight Co., v. Chandler*, 211 Mass. 226, 228, 97 N.E. 906, 907 (1912).

This is particularly true where, as here, the City's interests and Prudential's are so divergent. Prudential's only interest is in maximizing its return on investment[2] at the expense of other creditors. Given its self interest, Prudential cannot act in the City's interest to secure repayment by the Debtors or to protect the City's interest in seeing to the success of the W Hotel and Residences which provide an economic benefit to the citizens of the City. These important rights can only be protected by the City in the exercise of the rights granted to it by the Bankruptcy Code.

2.  **The Bankruptcy Court Correctly Employed the Flexible Approach and Correctly Determined that Prudential Was Only Entitled to Postpetition Interest from the Date of the Hotel Sale.**

MBA incorrectly states that the purpose of the Bankruptcy Court's valuation of Prudential's secure status was to determine "whether to 'cramdown' a Chapter 11 plan upon an unwilling secured creditor."[3] *MBA Brief at 23*. As the City previously has pointed out, the purpose of the Bankruptcy Court's valuation actually was to determine, pursuant to Prudential's own motion, whether Prudential was entitled to postpetition interest pursuant to §506(b). *City Opening Brief at 23-24*.

MBA further argues that the timing of the valuation for purposes of §506(b)

---

[2] Prudential equates itself to a hedge fund. *App. at 1338.*
[3] Interestingly, much like Prudential, MBA's brief erroneously refers to Debtors' Chapter 11 Plan as a "liquidating plan". *See MBA Brief at 6.*

must be "tethered" to the Court's cramdown analysis. *MBA Brief at 23*. MBA's inflexible "tethering" position is in conflict with this Court's flexible approach to valuation, based upon the unique circumstances of each case. *Winthrop Old Farm Nurseries, Inc. v. New Bedford Inst. for Sav. (In re Winthrop Old Farm Nurseries, Inc.)*, 50 F.3d 72, 73-75 (1st Cir. 1995).

Here, the Bankruptcy Court properly looked at the circumstances of this case – where the value of Prudential's collateral increased significantly and where a substantial portion of Prudential's collateral was sold in an arm's length transaction at a fortuitously high price during the bankruptcy – and found that the date of the Hotel Sale was the most appropriate date upon which to value Prudential's collateral. *See generally, City Opening Brief at 24-27*.

Rather than looking at the unique circumstances of each case, MBA would have the bankruptcy court perform all §506(b) analyses exclusively in conjunction with plan confirmation, and relate that value back to the Petition Date. As both the Bankruptcy Court and Bankruptcy Appellate Panel for the First Circuit observed, and as MBA even acknowledged in its brief, this sort of "single valuation" approach is "overly simplistic". *See MBA Brief at 25*. Such limited analysis would provide a windfall to a secured creditor who had been undersecured throughout the entire proceeding, so long as it became oversecured a day before plan

confirmation. *See City Opening Brief at 22, ftnt. 7; City Reply Brief at 5-6.* If Congress had intended such a windfall for secured creditors, presumably it would have made express provision for that in the Bankruptcy Code.

## CONCLUSION

Wherefore the City of Boston respectfully requests that this Court:

A.      Reverse the BAP substitute finding that Prudential was oversecured from the Petition Date and affirm the Bankruptcy Court's finding the Prudential was not oversecured, and therefore was not entitled to postpetition interest, until June 8, 2011;

B.      Reverse the BAP holding that Prudential is entitled to compound interest on the amount of postpetition interest owed to it and affirm the Bankruptcy Court's finding that Prudential is not entitled to compound interest; and

C.      Reverse the BAP judgment vacating confirmation of the Plan and affirm the Bankruptcy Court's confirmation of the Plan, including that the City of Boston's voting rights were not assignable to Prudential.

Respectfully submitted,
THE CITY OF BOSTON
By its attorneys,

*/s/ E. Kate Buyuk*
Joseph F. Ryan, Esq. (1st Cir. No. 70141)
E. Kate Buyuk, Esq. (1st Cir. No. 1155065)
Lyne, Woodworth & Evarts LLP
12 Post Office Square, 2nd Floor
Boston, Massachusetts 02109
Telephone: (617) 523-6655
jryan@lwelaw.com
kbuyuk@lwelaw.com

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 1488 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using WordPerfect 12 in 14 point font size and Time New Roman font.

/s/ E. Kate Buyuk
E. Kate Buyuk (1st Cir. No. 1155065)
LYNE, WOODWORTH & EVARTS LLP
12 Post Office Square, 2nd Floor
Boston, Massachusetts 02109
Telephone: (617) 523-6655
Facsimile:  (617) 248-9877
Email: kbuyuk@lwelaw.com

## CERTIFICATE OF SERVICE

I, E. Kate Buyuk, hereby certify that on October 1, 2013, I caused the foregoing document to be filed using the CM/ECF System. Further, a copy of this document was served by this Court's CM/ECF system on the following counsel of record, listed as registered ECF Filers:

Harold B. Murphy, Esq.
Charles R. Bennett, Esq.
D. Ethan Jeffrey, Esq.
John C. Elstad, Esq.
Nathalie B. Sawyer, Esq.
Christopher M. Condon, Esq.
Murphy & King P.C.
One Beacon Street
21st Floor
Boston, MA 02108
*Counsel to Debtors*

Emanuel C. Grillo, Esq.
Meagan E. Costello, Esq.
Goodwin Procter, LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
*Counsel to Prudential*

Gina L. Martin, Esq.
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
*Counsel to Prudential*

William M. Jay, Esq.
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4432
*Counsel to Prudential*

Bruce F. Smith, Esq.
Jager Smith, P.C.
One Financial Center
Boston, MA 02111
*Counsel to Committee of Unsecured Creditors*

Patrick P. Dinardo, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
*Counsel to MBA*

/s/ E. Kate Buyuk
E. Kate Buyuk (1st Cir. No. 1155065)